UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
------------------------------------------------------------------------X
SAMUEL SCANELLA,

                                  Plaintiff,

      -against-

TD BANKNORTH; TD BANK US HOLDING
COMPANY; TD BANK US HOLDING COMPANY *d/b/a*
TD BANKNORTH, NATIONAL ASSOCIATION, TOMMY
BERNER, *individually*; MECCA ABDULLAH, *individually*;
SUE CHOI, *individually*, and ANN MARIE COROLLO,
*individually*.

                                  Defendants.
------------------------------------------------------------------------X

Civil Action No.

**COMPLAINT**

Plaintiff Demands
a Trial by Jury

Plaintiff, SAMUEL SCANELLA, as and for his Complaint against Defendants respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et. seq.* ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et. seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, § 9-1100 *et. seq* ("PFPO"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of his disabilities and retaliated against by his employer for requesting a reasonable accommodation for his disabilities, and for opposing and reporting such discrimination.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this court as this action involves a Federal Question under the Americans with Disabilities Act of 1990.   The Court also has supplemental jurisdiction over the State and City Causes of Action.

3. Venue is proper in this district based upon the events at issue that took place within the County of Philadelphia, in the Commonwealth of Pennsylvania within the Eastern District of Pennsylvania.

4. On or around November 21, 2016, Plaintiff SAMUEL SCANELLA filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") against Defendants TD BANKNORTH, N.A.; TD BANK US HOLDING COMPANY; TD BANK US HOLDING COMPANY *d/b/a* TD BANKNORTH, NATIONAL ASSOCIATION; TOMMY BERNER; MECCA ABDULLAH; SUE CHOI; and ANN MARIE COROLLO, as set forth herein.

5. On or around May 15, 2017, the EEOC issued Plaintiff a Right to Sue Letter.

6. This action is being commenced within ninety (90) days of Plaintiff's receipt of the EEOC Right to Sue Letter.

**PARTIES**

7. At all times material, Plaintiff SAMUEL SCANELLA (hereinafter "Plaintiff" or "SCANELLA") was and is an individual male who did and continues to reside in the County of Philadelphia, within the Commonwealth of Pennsylvania.

8. At all times material, Defendant TD BANKNORTH (hereinafter "Defendant TD BANKNORTH" or "TD BANKNORH") was and is a registered fictitious name of T.D. Banknorth, National Association, and is registered and authorized to do business in the Commonwealth of Pennsylvania.

9. At all times material, Defendant TD BANKNORTH operated and continues to operate a facility located at One Portland Square, P.O. Box 9540, Portland, ME 04112-9540.

10. At all times material, Defendant TD BANK US HOLDING COMPANY was and is a foreign business corporation duly existing under the laws of the State of Delaware and authorized to do business in the Commonwealth of Pennsylvania.

11. At all times material, Defendant TD BANK US HOLDING COMPANY operated a headquarters located at 1701 Route 70 East, Cherry Hill, New Jersey 08034.

12. At all times material, Defendant TD BANK US HOLDING COMPANY *d/b/a* TD BANKNORTH, NATIONAL ASSOCIATION operated a facility at One Portland Square, P.O. Box 9540, Portland, ME 04112-9540.

13. At all times material, Defendant TD BANK US HOLDING COMPANY *d/b/a* TD BANKNORTH, NATIONAL ASSOCIATION operated a headquarters located at 1701 Route 70 East, Cherry Hill, New Jersey 08034.

14. At all times material, Defendants TD BANKNORTH, TD BANK US HOLDING COMPANY, and TD US HOLDING COMPANY *d/b/a* TD BANKNORTH, NATIONAL ASSOCATION (hereinafter collectively referred to as "Defendants" and/or "TD BANK") operated and continue to operate a TD Bank branch office located at 1726 Walnut Street, Philadelphia, PA 19103 (hereinafter "the Walnut Street branch.")

15. At all times material, Defendants were Plaintiff's joint and solo employer.

16. At all times material, Defendant TOMMY BERNER (hereinafter referred to as "BERNER") was employed by Defendants as a Vice President.

17. At all times material, Defendant BERNER had supervisory authority over Plaintiff.

18. At all times material, Defendant MECCA ABDULLAH (hereinafter referred to as "ABDULLAH") was employed by Defendants as an Assistant Manager.

19. At all times material, Defendant ABDULLAH had direct supervisory authority over Plaintiff.

20. At all times material, Defendant SUE CHOI (hereinafter "CHOI") was employed by Defendants as a Human Relations Business Partner.

21. At all times material, Defendant CHOI held supervisory authority over Plaintiff.

22. At all times material, Defendant ANN MARIE COROLLO (hereinafter referred to as "COROLLO") was employed by Defendants as a VP Retail Marketing Manager.

23. At all times material, Defendant COROLLO held supervisory authority over Plaintiff.

## MATERIAL FACTS

24. In or around October 2002, Plaintiff began working as a Customer Service Representative for Defendants.

25. On or around October 6, 2014, Plaintiff was walking to his place of work at the Walnut Street branch when he twisted his ankle on a loose brick in Rittenhouse Square.

26. Plaintiff proceeded to go to work.   However, throughout the course of the day, Plaintiff's ankle began to swell excessively and he began to experience excruciating pain in his ankle.

27. Plaintiff continued to report to work each day that same week. Due to the fact that Plaintiff's desk was in the back of the bank, and that Plaintiff had to continually walk to the front of the bank to assist with customer service, the pain and swelling in Plaintiff's ankle continued to intensify during this time.

28. On or around October 13, 2014, Plaintiff could no longer withstand the pain in his ankle, so Plaintiff called out of work and went to the Emergency Room at the University of Pennsylvania Hospital.

29. During that hospital visit, the attending physician in the Emergency Room incorrectly diagnosed Plaintiff with Plantar Fasciitis.   The attending physician further told Plaintiff that his ankle should feel better within a couple of days, and gave Plaintiff a doctor's note to excuse him from work until October 16, 2014.

30. On or around October 13, 2014, Plaintiff's ankle pain and swelling continued to increase, so Plaintiff visited Dr. Frankel, his family physician. Dr. Frankel referred Plaintiff to Dr. Perez, a foot and ankle specialist.

31. On or around October 22, 2014, Plaintiff went to see Dr. Perez.   Dr. Perez ultimately diagnosed Plaintiff with two torn ankle ligaments, and recommended that Plaintiff have surgery to repair his right lateral ankle ligaments.

32. On or around November 20, 2014, Plaintiff had surgery on his ankle.   Once the surgery was completed, Dr. Perez issued orders that Plaintiff was not permitted to stand for prolonged periods of time until further notice.

33. In or around October 2014 through approximately February 1, 2015, Plaintiff was on approved leave under the Family and Medical Leave Act ("FMLA").   During that time, Plaintiff had surgery to repair the torn ligaments in his ankle and attended physical therapy.

34. Plaintiff returned to work on or around February 2, 2015.   During this time, Plaintiff was still completing physical therapy exercises to alleviate the residual pain and discomfort that he felt in his ankle.

35. Plaintiff provided Defendant BERNER with a Doctor's note indicating that Plaintiff was not permitted to stand for long periods of time or walk excessively during the course of the workday, because it could be detrimental to Plaintiff's ankle healing properly.

36. Due to his disability and physical restrictions relating to the newly-repaired ligaments, and considering the risk of permanent damage if Plaintiff stood for prolonged periods, Plaintiff requested a reasonable accommodation from Defendants.

37. In or around the first week of February 2015, Plaintiff requested a reasonable accommodation of having his desk moved closer to the front of the bank, so if he had to assist Defendants' customers at the teller station, he would not have to walk back and forth from the back of the bank where his desk was located.

38. Additionally, Plaintiff requested that he be provided with a chair to utilize at the teller station in the event that he had to cover that area to serve customers.   Otherwise, Plaintiff risked standing for prolonged periods, risking further injury to his ankle, as well as increased pain and swelling.

39. Defendants TD BANK did move Plaintiff's desk closer to the front of the bank.

40. However, despite a chair being provided at the teller station for two of Plaintiff's co-workers, there was no chair conveniently located at or near the teller station for Plaintiff to use when he had to cover the customer service counter.

41. Plaintiff continued to work at the teller station, and had to choose between standing for long periods of time or walking a great distance to retrieve a chair, nullifying the accommodation of moving his desk closer to the teller station.

42. Defendants continually failed to provide a chair available to accommodate Plaintiff's disability.

43. In or around June 2015, in response to his continued requests for a reasonable accommodation, Defendants placed Plaintiff on a Performance Improvement Plan ("PIP") because he had an unscheduled absence on March 10, 2015, and June 8, 2015.

44. At all times material, Defendant TD BANK did not have a policy in place about the number of absences permitted by employees.

45. After receiving the PIP, Plaintiff informed Defendant BERNER that he had missed those days because of the continued pain and swelling of his ankle, and because he had been required to spend prolonged periods of time on his fees, contrary to his doctor's orders.

46. Plaintiff further told Defendants BERNER and ABDULLAH that he felt that he was being singled out and deliberately targeted since returning from his surgery, and further that he had not yet been completely cleared of his disability by his treating physician.

47. On or around August 2015, Plaintiff's co-worker Juanita (last name unknown) ("JUANITA") was terminated from her position at the Walnut Street branch. Following JUANITA's termination, TD BANK placed Plaintiff on the customer service representative schedule to cover (at a minimum) three shifts per week behind the teller line.

48. On or around August 27, 2015, Defendants BERNER and CHOI again placed Plaintiff on a Performance Improvement Plan.

49. During this time, Plaintiff continued to experience regular pain and swelling in his ankle. Accordingly, in or around September 2015, Plaintiff again requested that Defendant ABDULLAH provide a chair for him for when he was required to cover the teller station. In response, Defendant ABDULLAH replied in words or substance: "You don't need a chair for straights [straight deposits], they are fast."

50. Accordingly, Defendants ignored and refused Plaintiff's request for a reasonable accommodation.

51. On or around October 8, 2015, Claimant emailed Defendant CHOI, and informed CHOI that he would like to request a transfer to another bank because he had been called into the office and reprimanded on six separate occasions since August 27, 2015.

52. During this same conversation, Plaintiff further explained to CHOI that he felt targeted by management and that he was being treated differently than other employees of Defendants.

53. Several days later, Defendant CHOI contacted Plaintiff and told him that there was nothing CHOI could do for him, and further that there were no positions available for a transfer.

54. On or around November 11, 2015, again in retaliation for reporting that he felt singled out and discriminated against based on his disability and requests for accommodations, Defendants wrongfully issued Plaintiff a write-up.

55. On or around November 25, 2015, Defendants informed Plaintiff that he did not meet his goals of "significant and sustained improvement," and thereby extended his Performance Improvement Plan.

56. On or around December 8, 2015, Plaintiff was written up for allegedly not meeting his sales goals.   On information and belief, Plaintiff's non-disabled co-worker Renee (last name unknown) (hereinafter "RENEE") was also not meeting sales goals at this time, but was not written up by Defendants.

57. On or around December 17, 2015, Defendants wrongfully accused Plaintiff of dissuading a customer from applying for a loan, because the customer was of foreign origin and did not have established credit in the United States.

58. However, Plaintiff had actually explained the loan process to the customer, and had informed the customer that they could apply for the loan, despite not having established credit in the United States.

59. On or around December 23, 2015, Plaintiff contacted Defendant COROLLO and explained that despite his complaints to Defendant CHOI, Plaintiff felt that he was still being singled out since he returned from his surgery, and again requested a transfer.

60. In response, Defendant COROLLO told Plaintiff that there was no location available for Plaintiff to transfer. Defendant COROLLO also rebuffed Plaintiff's complaints, and asked Plaintiff in words or substance if he was "imagining being singled out."

61. At all times material, Defendants failed to investigate Plaintiff's legitimate complaints of discrimination and retaliation, and failed to take appropriate remedial action.

62. Around one month later, on or around January 27, 2016, Defendants terminated Plaintiff.

63. Defendants wrongfully terminated Plaintiff because of his disability, because of his request for a reasonable accommodation, and in retaliation for Plaintiff's opposition to and complaints regarding Defendant's unlawful and discriminatory practices.

64. As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent psychological injuries, including permanent psychological injuries.

65. Plaintiff suffers from regular panic attacks and nightmares relating to Defendant's conduct. Plaintiff has difficulty sleeping and eating.

66. As a result of Defendants' actions, Plaintiff has been caused to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

67. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.   Plaintiff has further experienced severe emotional and physical distress.

68. As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdictional limit of all lower courts.

69. Defendants' conduct has been malicious, willful and/or outrageous, and conducted with full knowledge of and reckless indifference of the law.   As such, Plaintiff demands punitive damages against all Defendants, jointly and severally.

70. The above are just some of the examples of discrimination and retaliation to which Defendants subjected Plaintiff.

71. Defendants have established a pattern and practice of not only discrimination, but also retaliation.

### AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT
**(Not against Individual Defendants)**

72. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

73. Title 42 of the Americans with Disabilities Act of 1990 (Pub. L. 101-336), Chapter 126, Subchapter I, § 12112, Discrimination [Section 102] states: "(a) General rule. - No

covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

74. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disabilities.

75. As such, Plaintiff has been damaged as set forth herein.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT
### (Not against Individual Defendants)

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

77. Title 42 of the Americans with Disabilities Act of 1990 (Pub. L. 101-336), Chapter 126, Subchapter IV, § 12203, states: "(a) Retaliation: No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

78. Defendants engaged in an unlawful discriminatory practice by discriminating against and retaliating against Plaintiff because of Plaintiff's opposition to Defendants' unlawful employment practices.

79. As such, Plaintiff has been damaged as set forth herein.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER STATE LAW

80. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

81. The Pennsylvania Human Relations Act ("PHRA") § 955 provides that it shall be an unlawful employment practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges or employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

82. Defendants engaged in unlawful employment practices prohibited by PHRA § 955 *et seq.*, by discriminating against Plaintiff because of his disabilities.

83. Plaintiff hereby makes a claim against Defendants under all the applicable paragraphs of PHRA § 955.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER STATE LAW

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

85. The PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency, or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding, or hearing under this act."

86. Defendants engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to Defendants' unlawful employment practices.

### AS A FIFTH CAUSE OF ACTION
### FOR AIDING AND ABETTING UNDER STATE LAW

87. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

88. The PHRA § 955(e) provides that it shall be an unlawful employment practice "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

89. Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct.

### AS A SIXTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER THE PHILADELPHIA
### CITY ADMINISTRATIVE ORDINANCE

90. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

91. The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice:  "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability,

marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

92. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of Plaintiff's disability.

93. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.

**AS A SEVENTH CAUSE OF ACTION**
**FOR RETALIATION UNDER THE PHILADELPHIA**
**CITY ADMINISTRATIVE ORDINANCE**

94. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

95. The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: " For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

96. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS AN EIGHTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER THE PHILADELPHIA
## CITY ADMINISTRATIVE ORDINANCE

97. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

98. The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

99. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Philadelphia, Pennsylvania
August 7, 2017

                                       **DEREK SMITH LAW GROUP, PLLC**
                                       Attorneys for Plaintiffs

By: _____
     Samuel C. Wilson, Esq.
     1845 Walnut Street, Suite 1600
     Philadelphia, Pennsylvania 19103
     (215) 391-4790